IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL C. PIANTONE, et al.,<br>Plaintiffs,<br>v.<br>MASSACHUSETTS BAY INSURANCE COMPANY,<br>Defendant. | CIVIL ACTION<br>NO. 25-7018 |

**OPINION**

**Slomsky, J.** **August 26, 2026**

## I. INTRODUCTION/BACKGROUND[1]

This matter arises from an insurer's denial of an insured's claim. Plaintiffs Paul C. Piantone, Christopher L. Piantone, Leonard M. McGrady, Sr., Philip Piantone, and Patrick L. McGrady[2] ("Plaintiffs") own property at 101–109 East Main Street, Norristown, Pennsylvania ("the Property"). (Doc. No. 8 ¶ 1.) Plaintiffs had "Businessowner Coverage" insurance for the Property issued by Defendant Massachusetts Bay Insurance Company ("Defendant").[3] (Id. ¶ 4; Ex. A.) On June 6, 2023, a contractor for the utility company Pennsylvania American Water Company "jackhammered a large hole in the sidewalk in front of [P]laintiffs' building," causing damage to the sidewalk, an underground support structure, and a "large room beneath the

---

[1] The facts in this Opinion are sourced from the First Amended Complaint ("FAC") (Doc. No. 8) and are taken as true at this stage of litigation.

[2] Plaintiffs Leonard M. McGrady, Sr., Philip Piantone, and Patrick L. McGrady are named as Trustees of the Family Trust of Pasquetta McGrady in the FAC. (Doc. No. 8 at 1.)

[3] The insurance policy is attached as Exhibit A of the FAC. Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

sidewalk, that is part of [P]laintiffs' property." (Id. ¶¶ 5–6.) As a result, Plaintiffs submitted a claim to Defendant for coverage under the policy to make necessary repairs.[4] (Id. ¶¶ 7–8.) On December 12, 2024, Defendant denied Plaintiffs' claim, citing multiple exclusions in the insurance policy. (Id. ¶ 4; Ex. B.)

On November 12, 2025, Plaintiffs filed a Complaint in the Court of Common Pleas of Montgomery County, Pennsylvania, alleging breach of contract (Count I) and bad faith (Count II). (Doc. No. 1-1.) On December 12, 2025, Defendant removed the case to this Court. (Doc. No. 1.) On December 30, 2025, Plaintiffs filed the First Amended Complaint ("FAC"), alleging the same two claims for breach of contract (Count I) and bad faith (Count II). (Doc. No. 8.) On January 30, 2026, Defendant filed a Motion to Dismiss the FAC. (Doc. No. 12.) On February 12, 2026, Defendant filed a Response in Opposition to Defendant's Motion (Doc. No. 13), and on February 19, 2026, Defendant filed a Reply (Doc. No. 14.) Defendant's Motion to Dismiss (Doc. No. 12) is now ripe for disposition.

## II. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id.

[4] It is unclear from the FAC whether Plaintiffs have already made the repairs.

(quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination

is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## III. ANALYSIS

### A. Breach of Contract (Count I)

In Count I, Plaintiffs allege that Defendant breached the insurance policy on the Property by denying Plaintiffs' claim for the damaged sidewalks and the supporting structure. (Doc. No. 8 ¶ 5.) Plaintiffs describe the sidewalk as "hollow[,] with a large room located beneath the sidewalk . . . that is supported by structural beams and reinforcing steel in the concrete." (Id. ¶ 6.) As a result of the contractor's jackhammering, Plaintiffs allege the following:

> . . . [T]he sidewalk and supporting steel beams sustained damage, which requires [P]laintiffs to fill the room beneath the sidewalk, move the utilities that exist in the room beneath the sidewalk, and to rebuild the sidewalk and handicap ramp to a code that did not exist when the sidewalk and handicap ramp were initially constructed.

(Doc. No. 8 ¶ 7.)

In the FAC, Plaintiffs assert a claim for coverage under two provisions of the "Businessowner Coverage" policy. The first provision is the standard insuring agreement for the Property, which provides as follows:

> **SECTION I – PROPERTY**
>
> **A. Coverage**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Loss.
>
> > **1. Covered Property**: Covered Property includes Buildings as described in paragraph a. below . . .
> >
> > > a. Buildings, meaning the buildings and structures at the premises described in the Declarations.
>
> ***
>
> > **3. Covered Causes of Loss**: Risks of direct physical loss unless the loss is:

a. Excluded in Section I – Property, B. Exclusions; or
b. Limited in Section I – Property, A. Coverages, 4. Limitations

(Doc. No. 8-1 at 4–6.)

The second provision that Plaintiffs claim coverage under comes from the "Additional Coverages" portion the policy, which—in the "Ordinance or Law" section—provides as follows:

> **I. Ordinance or Law**
> **(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.
>
> **(2) Application of Coverages**: The coverages provided under this Additional Coverage applies only if paragraphs (a) and (b) below, are satisfied and are then subject to the qualifications found in (c) below.
> (a) The ordinance of law:
> (i) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premise;
> (ii) is in force at the time of loss; and
> (iii) was not in force at the time the involved construction was completed. . .
>
> (b) The building sustains direct physical damages:
> (i) That is covered under this Coverage Form and as a result of such damage, you are required to comply with the ordinance or law; or
> (ii) That is covered under this Coverage Form and direct physical damage that is not covered under this Coverage Form and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

(Id. at 14.)

"Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract govern its interpretation." Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010) (citations omitted). In interpreting an insurance contract, the Court must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Donegal Mut. Ins. Co. v.

Baumhammers, 938 A.2d 286, 290 (2007) (citing 401 Fourth Street, Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005)).

"Under Pennsylvania law, an insurance policy must be read as a whole and construed according to the plain meaning of its terms." Selective Way Ins. v. Travelers Prop. Cas. Co. of Am., 724 F. Supp. 2d 520, 525 (E.D. Pa. 2010) (citing C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981)). Commonly used terms "are to be construed in their natural, plain, and ordinary sense, and courts may inform their understanding of such words by consulting a dictionary." Id. (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999)). On the other hand, ambiguous terms must be "'construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.'" Colella v. State Farm Fire & Cas. Co., 407 Fed. App'x 616, 619 (3d Cir. 2011) (quoting 401 Fourth St., 879 A.2d at 171). Additionally, when "an insurer relies on a policy exclusion as the basis for its denial of coverage . . ., the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

Here, Defendant does not argue about the applicability of the two coverage provisions cited by Plaintiffs in the FAC. Rather, the crux of Defendant's contention is the claimed losses—to the sidewalk, the supporting steel beams, and the room beneath the sidewalk—are specifically excluded under the policy by the faulty workmanship exclusion (the "Exclusion"). (Doc. No. 12-2 at 9.) In relevant part, the Exclusion provides as follows:

> **Section I – Property, B. Exclusions**
>
> ***
>
> **3.** We will not pay for loss or damage caused by or resulting from paragraphs a. b. and c. below. But if an excluded cause of loss that is listed in paragraphs a., b., and c. below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

***

**c. Negligent Work**: Faulty, inadequate or defective:
(1) planning, zoning, development, surveying, siting;
(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) maintenance; of part or all of any property on or off the described premises.

(Doc. No. 8-1 at 44–45.)

Defendant notes that Pennsylvania courts have broadly interpreted the Exclusion in paragraph 3(c) to mean the "faulty or defective execution of making or doing something." (Doc. No. 12-2 at 10) (citing Jones v. Allstate Property and Casualty Ins. Co., 552 F. Supp. 3d 498, 503 (E.D. Pa. 2021)). As applied to the facts of this case, Defendant argues that the losses stemming from the faulty jackhammering performed by a contractor for the Pennsylvania American Water Company ("PAWC") "fall[] squarely within" the Exclusion. (Doc. No. 12-2 at 9.) Plaintiffs counter with two arguments: (1) the Exclusion does not apply because Plaintiffs "had not contracted with anyone and were unaware that contractors" were going to demolish the sidewalk; and (2) the "ensuing loss" clause in the Exception is ambiguous as it relates to Plaintiffs' claim, so it should be interpreted against Defendant as the insurer. (See Doc. No. 13-1 at 5–9.) The Court will address both arguments in turn.

First, Plaintiffs assert in their Response in Opposition that they were not involved in the decisions to perform work on the sidewalk. (See, e.g., Doc. No. 13-1 at 6) ("[P]laintiffs in this case had not contracted with anyone and were unaware that contractors for PAWC were going to come onto their property without notice or permission and begin demolishing the sidewalk which was hollow."). However, Plaintiffs fail to demonstrate the significance of their lack of involvement in the sidewalk work. Importantly, the Exclusion does not condition its

applicability on who performed the work or whether an insured played some role in authorizing the work. Instead, the Exclusion speaks broadly and plainly, stating that losses resulting from "faulty, inadequate, or defective" work are not covered. (See Doc. No. 8-1 at 44–45.) Accordingly, Plaintiffs' first argument fails. See Berenato v. Seneca Speciality Ins. Co., 240 F. Supp. 3d 351, 356 (E.D. Pa. 2017) (noting that the Third Circuit and Pennsylvania Supreme Court caution against "straining to find ambiguity in insurance contract language.").

Second, Plaintiffs argue that the "ensuing loss" clause in the Exception is ambiguous as it relates to Plaintiffs' claim, and, as a result, should be construed against Defendant as the drafter of the policy. (Doc. No. 13-1 at 7–8.) The "ensuing loss" clause in the Exclusion provides that, in the event the faulty workmanship "results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." (See Doc. No. 8-1 at 44.)

To support this argument, Plaintiffs rely on Griggs Rd., L.P. v. Selective Way Ins. Co. of Am., 368 F. Supp. 3d 799 (M.D. Pa. 2019).[5] In Griggs, a subcontractor hired to install stucco "committed certain errors that rendered the stucco installation worthless," leading the subcontractor to remove and reapply the stucco. Griggs, 368 F. Supp. 3d at 801. Importantly, in addition to causing removal and reapplication, the faulty stucco installation "damaged the home's walls and soffits." Id. The policy in Griggs contained the following faulty workmanship exclusion with an "ensuing loss" clause, which closely mirrors the language in the policy in the present case:

> We will not pay for loss or damage caused by or resulting from [faulty, inadequate or defective workmanship, repair, construction.] But if loss or damage by a

[5] The Pennsylvania Supreme Court "has not issued any relevant decisions interpreting an ensuing loss clause . . . .". Griggs Rd., L.P. v. Selective Way Ins. Co. of Am., 368 F. Supp. 3d 799, n.20 (M.D. Pa. 2019); see also Campanile v. Hanover Ins. Co., No. 25-cv-3028, 2026 WL 1830934, at *4 (E.D. Pa. June 24, 2026) (acknowledging the same).

> Covered Cause of Loss results, we will pay for the loss or damage caused by the Covered Cause of Loss.

Id. The Griggs court held that, "[r]eading the faulty workmanship exclusion and the ensuing loss clause together" renders the language ambiguous—that is, "'reasonably susceptible of different constructions and capable of being understood in more than one sense' when applied to the facts of this case." Griggs, 368 F. Supp. 3d at 805 (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)).

The Griggs court explained that, under one reasonable construction favoring the insured plaintiffs, the language "[b]ut if loss or damage by a Covered Cause of Loss results" could mean that "the insurer pays for certain losses even though they resulted from the faulty workmanship." Id. Under this interpretation of the Exclusion, "the faulty workmanship exclusion would exclude coverage only for costs incurred to correct faulty workmanship," but would not exclude other damage downstream caused by the faulty workmanship. Id. at 805. Applied to the facts in Griggs, the Exclusion only barred coverage for the removal and reapplication of the stucco—which corrected the faulty workmanship—but not from the "ensuing losses" to the home's walls and soffits—which were downstream from the faulty workmanship. Id.

The Griggs court acknowledged a second reasonable construction of the language favoring the defendant insurer. Under this construction, "the ensuing loss clause would restore coverage only to those losses attributable to a cause other than the faulty workmanship." Id. at 806. Applied to the facts in Griggs, the Exclusion would bar coverage not only for removal and reapplication, but also for downstream costs incurred to repair the home's walls and soffits because "both losses . . . are intertwined with the stucco subcontractor's faulty . . . installation." Id.

Given that the plaintiffs and the defendant in Griggs both proposed interpretations that were "objectively reasonable," the court found the Exclusion ambiguous when read with the "ensuing loss" clause. Id. As a result of the ambiguity, the Griggs court construed the faulty workmanship exclusion in favor of the plaintiffs and granted summary judgment in their favor. Id. at 810.

Moreover, a court in this district recently adopted the first, insured-friendly, interpretation from Griggs, holding the following:

> In the court's view, the contractual language in issue is unambiguous. The clear meaning of "any ensuing loss" is a loss that follows from faulty workmanship and results in consequential damages to property beyond the property that was the subject of the faulty workmanship.

Campanile v. Hanover Ins. Co., No. 25-cv-3028, 2026 WL 1830934, at *4 (E.D. Pa. June 24, 2026). Consequently, the Campanile court held that the faulty workmanship exclusion only barred coverage for losses "associated with correcting" the faulty work, but did not bar coverage for downstream or consequential damages resulting from the workmanship. Campanile, 2026 WL 1830934, at *4.[6]

In the present case, neither party acknowledges that some losses may be barred while other losses may be covered. Instead, both parties take a maximalist approach. For instance, Plaintiffs seek indemnification for all costs related to work by PAWC's contractor, including

[6] In its Reply, Defendant argues that the finding of ambiguity in Griggs is inapposite to the present case because "Griggs involved an all-risks policy—a type of policy that covers all perils unless a specific peril is excluded—not a homeowners' policy which covers only specific enumerated perils." (Doc. No. 14 at 2.) As an initial matter, the court in Campanile involved a homeowners' insurance policy, and reached the same, plaintiff-favorable result as Griggs did regarding the "ensuing loss" clause. See Campanile, 2026 WL 1830934, at *1. Additionally, Defendant does not explain why the distinction between all-risks and a homeowners' policy is relevant. In fact, Defendant's Motion to Dismiss relies solely on the applicability of the Exclusion, not on whether damages suffered by Plaintiffs would—in the absence of the Exclusion—be covered under the policy.

"fill[ing] the room beneath the sidewalk, mov[ing] the utilities that exist in the room beneath the sidewalk, and . . . rebuild[ing] the sidewalk and handicap ramp to a code that did not exist when the sidewalk and handicap ramp were initially constructed." (Doc. No. 8 ¶ 7.) On the other hand, Defendant argues that "there is no coverage under the policy for Plaintiff's claims." (Doc. No. 12-2 at 11.)

While some costs associated with correcting the work to the sidewalk may be included in the Exclusion, other costs—particularly costs incurred to repair the room beneath the sidewalk—may be covered under the policy as "ensuing losses." Construing these allegations in the FAC in the light most favorable to Plaintiffs, Plaintiffs have properly alleged that Defendant breached the insurance policy when they refused to provide any indemnification to Plaintiffs.

Two additional reasons buttress this conclusion. First, when an insurer raises an exclusion to bar coverage, the exclusion "must be construed narrowly against the drafter and in favor of coverage." Campanile, 2026 WL 1830934, at *2 (citing Mut. Benefit Ins. Co. v. Politsopoulos, 115 A.3d 844, 852 n.6 (Pa. 2015)). Second, the FAC includes limited facts about the work performed by PAWC and its contractor, neither of which are parties in this case. Without additional discovery into the nature of the contractor's work and the types of damage resulting from that work, granting a motion to dismiss at this stage would be premature. Accordingly, Plaintiffs' breach of contract claim in Count I will not be dismissed.

**B. Bad Faith (Count II)**

In Count II, Plaintiffs alleges that Defendant acted in bad faith when it denied Plaintiffs claim, in violation of 42 Pa. C.S. § 8371. (Doc. No. 8 ¶ 25.) In the Motion to Dismiss, Defendant contends that Plaintiffs' bad faith claims lacks factual support "as to why the insurer's

decision to reject the claim was unreasonable" and as to why Defendant's investigation was deficient. (Doc. No. 12-2 at 15–17.)

Pennsylvania's bad faith statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. The statute does not define "bad faith," but the Pennsylvania Superior Court defines bad faith on the part of an insurer as "any frivolous or unfounded refusal to pay proceeds of a policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).

To succeed on a bad faith claim, a plaintiff must typically show that the insurer "(1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." Yandrisovitz v. Ohio State Life Ins. Co., No. 18-cv-1036, 2018 WL 4203840, at *4 (E.D. Pa. Aug. 31, 2018) (citing W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003). The insurer's conduct need not be fraudulent, but "'mere negligence or bad judgment is not bad faith.'" Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. 2004)). The statute also "encompasses a broad range of insurer conduct, including unreasonable delay in evaluating claims, failure to communicate with the insured, frivolous refusal to pay, inadequate investigation into the factual basis of the insurance claim, and failure to conduct legal research concerning coverage." Campanile v. Hanover Ins. Co., No. 25-cv-3028, 2025 WL 2350863, at *2 (E.D. Pa. Aug. 13, 2025) (internal citations omitted).

Because bad faith claims are fact-specific, to survive a motion to dismiss, "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing Smith v. State Farm Mut. Auto. Ins. Co., 506 Fed. App'x 133, 136 (3d Cir. 2012)). To that end, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." Id.

Here, the allegations in Plaintiffs' bad faith claim can be grouped into four buckets: (1) Defendant had "no reasonable and sufficient basis to deny [P]laintiffs' claim"; (2) Defendant "failed to conduct any investigation into [P]laintiffs' loss"; (3) Defendant falsely claimed in its letter of denial dated February 25, 2025 that it had, in fact, conducted an investigation; (4) Defendant did not respond to a letter dated February 25, 2025 sent by counsel for Plaintiffs after Defendant denied Plaintiffs' claim, in which counsel for Plaintiffs "point[ed] out that no investigation had been conducted and request[ed]" evidence to support Defendant's denial. (Doc. No. 8 ¶ 22–31; Exs. B, C.)

The first bucket consists of conclusory statements that Defendant had no reasonable basis to deny Plaintiffs' claim and that Defendant possessed no evidence that the damage was not a covered loss. Accordingly, those allegations will not be considered in the Court's plausibility determination. See Pasqualino v. State Farm Mut. Auto. Ins. Co., No. 15-cv-0077, 2015 WL 3444288, at *5 (E.D. Pa. May 28, 2015) (dismissing bad faith claim based on "Plaintiff's cursory allegations assert that Defendant lacked a reasonable basis for denying Plaintiff's claim for benefits.").

But, in addition to those conclusory statements, Plaintiffs also aver that Defendant did not send "investigators, insurance adjusters or any other representative of [D]efendant" to the

property. (Doc. No. 8 ¶¶ 27–28.) Further, Plaintiffs allege that Defendant's letter of denial misrepresented Defendant's investigative efforts, and when Plaintiffs requested the evidence relied on by Defendant in denying the claim, Defendant did not respond. (Id. ¶¶ 29–31.) Defendant counters that "there was no need for [Defendant] to visit the site to view damages for which there was clearly no coverage" based on the Exclusion. (Doc. No. 12-2 at 16.) However, allegations of a "lack of investigation into the facts of a claim or a failure to communicate with a claimant"—which are both alleged in the FAC—can demonstrate bad faith. Carr v. Travelers Home & Marine Ins. Co., 700 F. Supp. 3d 288, 295 (E.D. Pa. 2023) (citing Bussie v. Am. Sec. Ins. Co., No. 20-cv-3519, 2021 WL 2206282, at *6 (E.D. Pa. June 1, 2021)). Viewing the allegations in the FAC in the light most favorable to Plaintiffs, Plaintiffs have properly alleged that Defendant acted in bad faith in its investigation of the accident and its failure to communicate with Plaintiffs. Liberty Ins. Corp. v. Keck, No. 11-cv-1242, 2011 WL 3666597, at *5 (E.D. Pa. Aug. 22, 2011) (denying motion to dismiss bad faith claim when insurer did not conduct an investigation into the insured's claim, and instead relied solely on the insurer's interpretation of an exclusion in the policy).

Defendant cites MBMJ Props., LLC v. Millville Mut. Ins. Co., No. 18-cv-5071, 2019 WL 1651667 (E.D. Pa. Apr. 17, 2019) for the proposition that allegations of faulty investigations do not plausibly state a claim for bad faith if a complaint "is devoid of allegations as to (1) the timing of the alleged investigation in relation to when Plaintiffs submitted their claim, (2) the methods and procedures by which the investigation was conducted, and (3) the length of the investigation from start to finish." (Doc. No. 12-2) (quoting MBMJ, 2019 WL 1651667, at *6). But in MBMJ, the insured's complaint rested on allegations that the insurer's investigation was not "prompt" or "thorough." MBMJ, 2019 WL 1651667, at *6. Accordingly, the lack of factual

detail to support its allegations of a lack of promptness or thoroughness was fatal to the insured's bad faith claim. Id. In contrast, Plaintiffs here allege that no investigation was conducted, supporting that allegation by averring that Defendant did not send representatives to investigate the property. (Doc. No. 8 ¶ 27.) Moreover, Plaintiff alleged that Defendants misrepresented the nature of their investigation in the denial letter on December 12, 2024, and that Defendants refused to provide Plaintiffs with evidence of its denial upon Plaintiffs' request on February 25, 2025. (See Doc. No. 8 ¶¶ 29–31; Exs. B, C.) Taking these facts as true and construing them in a light favorable to Plaintiffs, Plaintiffs' bad faith claim in Count II will not be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the FAC pursuant to Rule 12(b)(6) (Doc. No. 12) will be denied. Defendant shall file an Answer to the FAC by September 10, 2026. An appropriate Order follows.